UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DOCTOR'S ASSOCIATES INC., | : | |
|     Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:13-CV-839 (JCH) |
| v. | : | |
| | : | |
| EDISON SUBS, LLC, | : | JANUARY 3, 2013 |
|     Defendant. | : | |

**RULING RE: PLAINTIFF'S MOTION FOR INJUNCTION (Doc. No. 2)**

Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, plaintiff Doctor's Associates Inc. (hereinafter "DAI" or "Subway") brings this action against defendant Edison Subs, LLC ("Edison") to compel arbitration in connection with a lawsuit brought in New Jersey state court (the "New Jersey Lawsuit"). DAI moves to enjoin Edison from prosecuting its claims against DAI, including claims asserted against DAI in the New Jersey Lawsuit, except through arbitral proceedings in Connecticut.

For the reasons set forth below, DAI's Motion (Doc. No. 2) is **DENIED**.

**I.  FACTUAL BACKGROUND[1]**

    A.  Franchise Agreement

The written franchise agreement underlying this action (the "Franchise Agreement") is for a Subway restaurant located in Edison, New Jersey. See Pl.'s Pet. to Compel Arbitration ("Pl.'s Pet.") (Doc. No. 1) ¶ 7. The Franchise Agreement requires any claim arising out of it to be resolved by arbitral proceedings in Connecticut. See Pl.'s Ex. B to Pl.'s Pet. ("Franchise Agreement") (Doc. No. 1-3) ¶ 10.a & b. A franchisee

---

[1] Neither party requested a hearing regarding this Motion, and the court did not hold such a hearing because there were no factual disputes. See Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations, 107 F.3d 979, 984 (2d Cir. 1997); Doctor's Associates, Inc. v. Stuart, 11 F. Supp. 2d 221, 224 n.3 (D. Conn. 1998).

1

who brings suit in court in violation of the Franchise Agreement agrees to pay DAI's costs and attorney's fees.  Id. ¶ 10.h.

In addition, the Franchise Agreement provides that a franchisee "may only seek damages or any remedy under law or equity for any arbitrable claim against [DAI] or [its] successors or assigns," and that DAI's "Affiliates, shareholders, directors, employees, agents and representatives, and their affiliates, shall not be liable nor named as a party in any arbitration or litigated proceeding" brought by the franchisee for claims arising out of or relating to the Franchise Agreement.  Id. ¶ 10.d.  A franchisee who violates this clause of the Franchise Agreement agrees to reimburse the reasonable costs of litigation and/or arbitration incurred by DAI as a result.  Id.

The Franchise Agreement was signed by Aliya Patel.  Id. at 15.  Edison did not sign—and, indeed, denies having ever received a copy of—the Franchise Agreement. See Def.'s Opp'n (Doc. No. 16) at 3.

  B. New Jersey Lawsuit

In March 2013, Edison instituted an action in New Jersey state court against DAI, Patel, and Subway Real Estate Corporation ("SREC"), a DAI affiliate.  See Ex. A to Pl.'s Pet. ("State Compl.") (Doc. No. 1-2); Pl.'s Pet. ¶ 13.  Edison's State Complaint includes claims against SREC for breach of contract and against DAI for breach of contract, fraud, violations of the New Jersey Consumer Fraud Act ("NJCFA"), negligent misrepresentation, and violations of the covenant of good faith and fair dealing.  See State Compl. ¶¶ 30-35, 56-95.

In the New Jersey Lawsuit, Edison alleges that it entered into "an oral franchise agreement" with DAI, whereby Edison would pay the costs of outfitting the premises as well as franchise and transfer fees to Patel in exchange for "all of the benefits of

ownership of the Subway franchise business." Id. ¶¶ 31-32. Edison further alleges that Patel, both individually and on behalf of DAI, fraudulently induced Edison to enter into this oral franchise agreement with DAI through a series of material misrepresentations and omissions, id. ¶¶ 65-71; that Edison began to operate its Subway franchise in October 2009, id. ¶ 14; and that Patel and DAI breached the terms of their oral franchise agreement with Edison by, inter alia, involuntarily ejecting Edison from the premises in December 2011, id. ¶¶ 26, 33.

## II.  DISCUSSION

Section 2 of the FAA "makes written arbitration agreements 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of a contract.'" Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 629-30 (2009) (quoting 9 U.S.C. § 2). Courts in this Circuit follow a two-part test, asking whether the parties are bound by a valid arbitration agreement and, if so, whether the instant dispute falls within the scope of the arbitration agreement. In re Am. Exp. Fin. Advisors Sec. Litig., 672 F.3d 113, 128 (2d Cir. 2011). Because the record before the court does not support the conclusion that Edison is bound by DAI's Franchise Agreement with Patel, the court need not reach whether Edison's claims fall within the scope of arbitrable claims covered by that agreement.

Passage of the FAA was motivated by Congress' desire to enforce consensual agreements to resolve disputes by arbitration. See Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989) (citing Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 220 (1985)). Hence, "the FAA does not require parties to arbitrate when they have not agreed to do so." Id.; see also In re Am. Exp. Fin. Advisors Sec. Litig., 672 F.3d 113, 127 (2d Cir. 2011) ("Despite the liberal federal

policy favoring arbitration agreements, arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." (citations and internal quotations marks omitted)); Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc., 198 F.3d 88, 97 (2d Cir. 1999) ("[A] court should be wary of imposing a contractual obligation to arbitrate on a non-contracting party.").

The fact that Edison did not sign the Franchise Agreement is undisputed. As both parties acknowledge, however, Edison may be bound by the Franchise Agreement, including its dispute resolution provisions, under certain common law principles of contract and agency. See Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir. 1995). The Second Circuit recognizes, in particular, five theories under which a signatory, like DAI, may compel a nonsignatory, like Edison, to arbitrate: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel. Id.; see also Denney v. BDO Seidman, LLP, 412 F.3d 58, 71 (2d Cir, 2005). Only the last of these—estoppel—is potentially relevant here.

"Under the estoppel theory, a company knowingly exploiting an agreement with an arbitration clause can be estopped from avoiding arbitration despite having never signed the agreement." MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC, 268 F.3d 58, 61 (2d Cir. 2001) (citation, alterations, and internal quotation marks omitted). This Circuit distinguishes between cases in which a nonsignatory to the agreement seeks to compel a signatory and cases in which the inverse is true. See Thomson-CSF, 64 F.3d at 778-79. Where, as here, a signatory seeks to compel a

nonsignatory, the nonsignatory must have directly benefitted from the agreement to trigger estoppel. Id. at 778.

Under MAG, a nonsignatory must, therefore, have "knowingly accepted the benefits" of the unsigned agreement, and the benefits must be direct. MAG, 268 F.3d at 61 (quoting Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S., 9 F.3d 1060, 1064 (2d Cir. 1993)). Absent notice or knowledge of the agreement and direct benefits to the nonsignatory, "a signatory may not estop a nonsignatory from avoiding arbitration regardless of how closely affiliated that nonsignatory is with another signing party." Id. at 62; see also Fresh Express Inc. v. Sardilli Produce & Dairy Co., Inc., No. 3:09-CV-1420 (SRU), 2010 WL 3724543, at *3 (D. Conn. Sept. 15, 2010) ("In order for a signatory to compel a non-signatory to participate in arbitration as a matter of estoppel, the non-signatory must have 'knowingly exploit[ed] the agreement' by, firstly, receiving notice of the agreement that contains the arbitration provision and, secondly, knowingly accepting that agreement's benefits." (citing Deloitte, 9 F.3d at 1064)).

As applied by courts in this Circuit, the doctrine of direct benefit estoppel is a narrow one. See MAG, 268 F.3d at 61-62. Such benefits must flow directly from the written agreement. See id. at 61. Indirect benefits—that is, "where the nonsignatory exploits the contractual relation of parties to an agreement, but does not exploit (and thereby assume) the agreement itself"—are not a basis to estop the nonsignatory from avoiding arbitration. Id. Thus, the fact that a nonsignatory is merely a signatory's successor or corporate parent need not trigger estoppel. Id. at 61-63; Thomson-CSF, 64 F.3d at 778-80. However, a nonsignatory can be estopped from refusing to arbitrate if it had notice of the unsigned agreement's terms and, for example, used a trade name

or received significantly lower insurances rates pursuant to that agreement. See, e.g., Deloitte, 9 F.3d at 1064; American Bureau of Shipping v. Tencara Shipyard S.P.A., 170 F.3d 349, 353 (2d Cir. 1999). The doctrine's purpose is to prevent a nonsignatory from "cherry-picking" the terms that it likes and "ignoring other provisions that don't benefit it or that it would prefer not to be governed by (such as an arbitration clause)." Invista S.A.R.L. v. Rhodia, S.A., 625 F.3d 75, 85 (3d Cir. 2010) (citing Tencara, 170 F.3d at 353).

DAI argues that Edison has directly benefited from the Franchise Agreement and, therefore, should be estopped from avoiding the arbitration clause. See Pl.'s Mem. at 6-8; Pl.'s Reply (Doc. No. 17) at 2-7. Edison argues that the New Jersey Lawsuit essentially sounds in fraud, not contract, and in no way asserts or relies on the existence of the Franchise Agreement signed by Patel. See Def.'s Opp'n at 8-9.

In a prior case before this court to which both parties refer, Doctor's Associates Inc. v. Zuchowski, No. 3:12-CV-195 (JCH), DAI sought to compel nonsignatories to arbitrate similar claims brought in state court. The court held that the Zuchowskis were not bound to arbitrate because they were only prospective franchisees, whose claims were premised on the failure of an expected business relationship to materialize. See id., Doc. No. 24, at 15-18.

In the present case, however, Edison indisputably held itself out to be a franchisee. See State Compl. ¶ 14 ("Edison . . . began operation at the leased premises as a Subway franchisee on October 16, 2009."). Edison also indisputably alleges the receipt of benefits—including a comprehensive Subway Operations Manual and the right to operate a Subway franchise using DAI's vendors, marks, and

6

methods—in exchange for payment of certain franchise fees.  See id. ¶¶ 10, 15, 77, 80-82.  Furthermore, although some of Edison's claims in the New Jersey Lawsuit rest on conduct which preceded the alleged franchise relationship between Edison and DAI, see id. ¶¶ 64-91 (Counts Six through Eight), others clearly concern conduct subsequent to Edison's alleged ownership and operation of a Subway franchise starting in October 2009, see id. ¶¶ 30-63 (Counts One through Five).

While the present case is thus distinguishable from Zuchowski, Edison, like the Zuchowskis, cannot be compelled to arbitrate because there is still no evidence in the record to support a finding that Edison "knowingly exploit[ed]" the Franchise Agreement containing the arbitration clause.  MAG, 268 F.3d at 61 (emphasis added); see also Hirsch v. Citibank, N.A., 13-1172-CV, 2013 WL 5716397 (2d Cir. Oct. 22, 2013) ("Mere acceptance of a benefit can constitute assent, but only where the 'offeree makes a decision to take the benefit with knowledge [actual or constructive] of the terms of the offer.'" (quoting Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 403 (2d Cir. 2004)).

It is true that Edison attached to its State Complaint a copy of the Franchise Agreement.  See State Compl. ¶ 7; Pl.'s Reply at 6.  However, DAI nowhere alleges or offers evidence that Edison, prior to allegedly receiving any benefits as a franchisee, had received a copy of the Franchise Agreement.  Edison explicitly represents that, on the contrary, it did not receive the Franchise Agreement.  See Def.'s Opp'n at 3.  Edison's New Jersey Lawsuit is based on an alleged oral franchise agreement entered into by itself, Patel, and DAI, and a fair reading of the State Complaint is that the benefits Edison alleges to have received were received pursuant to that alleged oral

7

franchise agreement.  See Pl.'s Reply (citing State Compl. ¶¶ 10, 13-15, 26, 31-33, 65-68, 70, 77-83).

DAI also nowhere alleges or offers evidence that Edison otherwise had notice of the terms of the written Franchise Agreement signed by Patel.  Indeed, far from being rooted in actual or constructive knowledge of such terms, Edison's claims against Patel and DAI are largely premised on Patel's and DAI's alleged failures to disclose material information.  See State Compl. ¶¶ 66-67, 70-71, 78, 89-91.  Hence, even assuming the benefits claimed by Edison as a franchise could be construed as direct, on the current record, the court cannot find that they were "knowingly accepted."  MAG, 268 F.3d at 61 (emphasis added).

DAI argues, in effect, that Subway franchise agreements always require arbitration—regardless of whether transferred from an existing to a new franchisee or entered into de novo with another party—and that a party claiming to be a franchisee should, therefore, necessarily be compelled to arbitrate.  See Pl.'s Reply at 6.  That argument is unavailing in the Second Circuit, however, absent a signed agreement containing an arbitration provision or proof that the case falls within one of the common law exceptions recognized by this Circuit.  See Thomson-CSF, 64 F.3d at 776.[2]  Because DAI has yet to establish that Edison knowingly exploited the Franchise

---

[2] Not only do the cases relied on by DAI all come from outside this Circuit; on the court's reading, they are not to the contrary of this Circuit's requirement of knowing exploitation to warrant estopping a nonsignatory.  See Pl.'s Reply at 6 (citing Meena Enterprises, Inc. v. Mail Boxes Etc., Inc., No. CIV. A. DKC 12-1360, 2012 WL 4863695 (D. Md. Oct. I I , 2012); Seney v. Rent-a-Center, Inc., 909 F. Supp. 2d 444 (D. Md. 2012); Mac Tools v. Diaz, No. 2:1 l-cv-940, 2012 WL 1409395 (S.D. Ohio Apr. 23, 2012); Lemiis v. CMH Homes, Inc., 798 F. Supp. 2d 853 (S.D. Tex. 2011).  In Meena Enterprises, the nonsignatories, in fact, "acknowledged that they had received copies of the Franchise Agreements and were familiar with their terms and conditions."  2012 WL 4863695, at *1.

Agreement, Edison cannot be estopped from refusing to arbitrate its claims in the New Jersey Lawsuit.

### III. CONCLUSION

For the reasons set forth above, the court **DENIES** plaintiff's Motion for Injunction (Doc. No. 2).

**SO ORDERED.**

Dated at New Haven, Connecticut this 3rd day of January, 2014.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge